UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THERESA BERKELEY, et al.,

        Plaintiffs,

    v.

WELLS FARGO BANK,

        Defendant.

Case No.  15-cv-00749-JSC

**ORDER RE: MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

Re: Dkt. No. 34

      Plaintiff Theresa Berkley brings this action challenging the activities of Defendant Wells Fargo ("Defendant") in relation to a residential mortgage loan.  The Court previously dismissed Plaintiff's first amended complaint ("FAC"), finding that all claims alleged therein failed to state a claim upon which relief could be granted.  (Dkt. No. 32.)  Now pending before the Court is Defendant's motion to dismiss Plaintiff's Second Amended Complaint ("SAC"), which brings three causes of action: (1) breach of the covenant of good faith and fair dealing; (2) breach of contract; and (3) violation of the Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200. (Dkt. No. 33.)  Having reviewed the parties' submissions, and having had the benefit of oral argument on September 3, 2015, the Court GRANTS the motion.

## BACKGROUND

**I.      Complaint Allegations**

      This action involves real property located at 1312 Greenwood Road, Pleasanton, California 94566 (the "Property").  (Dkt. No. 33 ¶ 2.)  In July 2005, Plaintiff took out a mortgage loan from World Savings Bank, FSB, secured by a Deed of Trust against the Property listing Plaintiff as the

borrower.  (*Id.* ¶¶ 4, 8, 10; Dkt. No. 35 at 6.)[1]  The Deed of Trust secured a debt in the amount of $656,250.  (Dkt. No. 35 at 7.)  World Savings changed its name to Wachovia Mortgage, FSB in 2007.  (Dkt. No. 35 at 25.)  Wachovia merged into Defendant in 2009.  (Dkt. No. 35 at 27.)  For the purposes of this Order, the Court refers to all three financial institutions as "Defendant."  The payments under the loan were approximately $2,400 per month, including principal, interest, and property taxes.  (Dkt. No. 33 ¶ 10.)  Of this amount, $770 per month was for property taxes, which was double what was actually owed due to an improper tax assessment.  (*Id.*)

Within two years, Plaintiff defaulted.  (*See id.* ¶ 11.)  In May 2007 Defendant recorded a Notice of Default.  (Dkt. No. 35 at 29.)  In July 2007, Plaintiff filed a Chapter 13 bankruptcy petition.  (*Id.* ¶ 11.)  Plaintiff proposed a Chapter 13 plan in which she reported being $18,000 in arrears on the loan and agreed to make post-petition mortgage payments to Defendant in the amount of $2,434.  (Dkt. No. 35 at 32; Dkt. No. 33 ¶ 11.)  In September 2007, Defendant objected to that plan, contending that Plaintiff's arrearage actually totaled $23,363.65, and that the required monthly payment should be $3,205.79.  (Dkt. No. 35 at 34-35.)  Ultimately, however, in March 2008 the bankruptcy court confirmed Plaintiff's proposed plan with a $2,434 monthly payment over Defendant's objection.  (Dkt. No. 33 ¶ 11; Dkt. No. 35 at 32, 69-70.)

---

[1] Pursuant to Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (i) is generally known within the trial court's territorial jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Judicial notice is appropriate for "materials incorporated into the complaint or matters of public record."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  Defendants request judicial notice of Exhibits A through O, which are publicly recorded documents pertaining to the Property,  official documents filed with federal agencies reflecting the corporate status of the financial institutions involved in this action, and documents from Plaintiff's proceedings in federal bankruptcy court that have a direct relation to the matters at issue here.  These documents are documents that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201; *see also, e.g.*, *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (noting that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citations omitted); *Chaghouri v. Wells Fargo Bank, N.A.*, No. 14-CV-01500-YGR, 2015 WL 65291, at *1 (N.D. Cal. Jan. 5, 2015) (taking judicial notice of publicly recorded documents); *Hite v. Wachovia Mortg.*, No. 2:09-cv-02884-GEB-GGH, 2010 U.S. Dist. LEXIS 57732, at *6-7 (E.D. Cal. June 10, 2010) (taking judicial notice of the same documents addressing World Savings' name change to Wachovia and Wachovia's conversion into Wells Fargo bank).  Therefore, the Court GRANTS Defendant's request for judicial notice of these documents.  (Dkt. No. 35.)  For the same reasons, the Court GRANTS Plaintiff's request for judicial notice of Exhibits A through F submitted in support of Plaintiff's supplemental brief.  (Dkt. No. 42-1.)

United States District Court
Northern District of California

1    Two months later, Defendant filed a motion for relief from stay in the bankruptcy action.

2  (Dkt. No. 35 at 72-73.)  Defendant's motion contended that Plaintiff's then-current monthly

3  payment amount had increased to $3,389.39.  (*Id.* at 74.)  Defendant filed another motion for relief

4  from the bankruptcy stay on November 3, 2010, this time contending that Plaintiff had not made

5  any monthly payments since October 12, 2010, and alleging that her monthly payment amounts

6  had increased to $3,795.70 for July and August 2010 and $4,022.54 for September and October

7  2010.  (Dkt. No. 35 at 90.)  Plaintiff objected to Defendants' proof of claim in August 2012 and

8  disputed the amount properly escrowed for property taxes.  (*Id.* at 94-97.)

9    Defendant submitted a proof of claim in support of its request for relief from the

10  bankruptcy stay, and Plaintiff filed an objection to Defendant's calculation of pre-petition

11  arrearage—in particular, disputing the amount owed for property taxes.  (*Id.* at 96.)  At that time,

12  Plaintiff also requested an accounting for post-petition arrearage, and suggested that the parties

13  stipulate to the amount of post-petition arrears then due and owing.  (Dkt. No. 35 at 96.)

14  Defendant responded, indicating that it was still researching the issues raised in Plaintiff's

15  objection.  (*Id.* at 110.)  Plaintiff's attorney then docketed a response indicating her "tentative[ ]

16  agree[ment] that the debtor is $100,944.14 post petition delinquent."  (*Id.* at 114.)  Plaintiff's

17  bankruptcy lawyer noted that her own calculations resulted in a total of post-petition arrears

18  $2,012.94 lower than the bank's, but noted that the bank would review the calculations and

19  respond.  (*Id.* at 115.)  She further noted that, while the bank reviewed the numbers, Plaintiff

20  would "consider[ ] what options are available, i.e. loan modification to cure the post petition

21  default."  (*Id.*)  Eventually, in May 2013 the parties entered a stipulation whereby the bank

22  withdrew its proof of claim and Plaintiff withdrew her objection, and the parties agreed that after

23  applying certain tax refunds to Plaintiff's pre-petition arrearage, any surplus should be applied to

24  post-petition arrearage.  (*Id.* at 118.)

25    Defendant did not provide the accounting that the court-approved stipulation required.

26  (Dkt. No. 33 ¶ 15.)  Defendant did not again assert in the course of the bankruptcy proceedings

27  that Plaintiff owed more in post-petition arrearage, nor did the bankruptcy court make such a

28  finding.  (*Id.*)  Plaintiff continued to make her monthly plan payments at the same lower rate until

United States District Court
Northern District of California

3

September 2013, when the bankruptcy court discharged her debt.  (*Id.* ¶ 16.)  At this point, Plaintiff thought she was current on her mortgage payments—including both pre- and post-petition arrearages.  (*Id.*)

Following the September 2013 bankruptcy discharge, Defendant sent Plaintiff notices that her account had been in default since December 2010 and for all subsequent payments.  (*Id.* ¶ 17.)  Defendant informed Plaintiff that her loan was over $200,000 in arrears.  (*Id.*)  Plaintiff's brother, Tim, who was authorized to speak with Defendant about the loan, contacted Defendant to find out why Plaintiff's account was not deemed current after the bankruptcy discharge.  (*Id.* ¶18.)  Defendant explained that Plaintiff's monthly payments under the loan had been increasing during the bankruptcy such that the payments she made while the bankruptcy proceeding was pending were insufficient—in other words, her post-petition arrears were growing.  (*Id.*)  At that time, Defendant provided Plaintiff an accounting to confirm its assertion.  (*Id.*)

From September 2013 through May 2014, Defendant continued to send monthly payments to Defendant.  (*Id.* ¶ 19.)  In April 2014, Tim called Defendant to request a loan modification on Plaintiff's behalf.  (*Id.* ¶ 20.)  Defendant assigned Plaintiff a single point of contact named Michael Bustamante.  (*Id.*)  At Mr. Bustamante's request, Plaintiff submitted a complete loan modification application in May 2014.  (*Id.*)  Defendant then stopped sending Plaintiff her monthly statements, and Mr. Bustamante told Tim that Plaintiff would not be making her monthly payments while her loan modification application was pending.  (*Id.*)  Plaintiff wanted to continue making payments, but Defendant asserted that she could not do so while her loan modification application was pending.  (*Id.*)

From May 2014 through November 2014, Plaintiff sent further documents to Defendant in support of her loan modification application.  (*Id.* ¶ 21.)  In November 2014, Mr. Bustamante called Tim to tell him that Defendant had found a loan modification for Plaintiff, but Defendant would not approve the loan modification because Plaintiff's monthly income was $217 per month below the requirement.  (*Id.*)  Mr. Bustamante stated that Defendant had failed to consider $5,000 of Plaintiff's annual income in reaching its loan modification determination, which would have covered the extra $217 per month, so when Plaintiff received the loan modification denial they

4

should appeal it on the basis of the failure to consider that additional income.  (*Id.*)  Mr. Bustamante informed Tim that once Defendant received the appeal, a permanent loan modification would follow.  (*Id.*)

Plaintiff received a letter from Defendant denying her loan modification application on November 20, 2014.  (*Id.* ¶ 22.)  On December 5, 2014, Plaintiff appealed the denial, disputing Defendant's monthly income calculation as Mr. Bustamante had instructed.  (*Id.*)  Nevertheless, on December 17, 2014, Defendant issued a letter summarily affirming the loan modification denial.  (*Id.*)  On December 22, 2014, Defendant sent a letter to Plaintiff notifying her of its intent to foreclose on the Property, which was $240,834.18 in arrears.  (*Id.*)

## II.    Procedural History

Plaintiff initiated this action on February 18, 2015.  (Dkt. No. 1.)  Plaintiff then filed the FAC in response to Defendant's motion to dismiss the complaint.  (*See* Dkt. Nos. 12, 15.)  The FAC, filed by Plaintiff and her brother and sister-in-law, alleged four causes of action: (1) breach of the covenant of good faith and fair dealing; (2) breach of contract; (3) violation of the Federal Rule of Bankruptcy Procedure 3200.1(b); and (4) violation of the Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200.  (Dkt. No. 15.)  The Court dismissed the entire complaint.  (Dkt. No. 32.)  The Court noted that Plaintiffs failed to show how Plaintiff's brother and sister-in-law were proper parties to the action.  (*Id.* at 1.)  The Court dismissed the breach of contract and breach of the implied covenant claims because the judicially noticeable documents pertaining to Plaintiff's bankruptcy proceedings—namely, her attorney's admission that she was over $100,000 in arrears and Defendant's disclosure that her monthly payments had increased—made it implausible that Plaintiff was not in breach herself.  (*Id.* at 2.)  The Court dismissed the Federal Rule of Bankruptcy Procedure cause of action with prejudice, as no such cause of action exists. (*Id.*)  The Court dismissed the fourth cause of action under the UCL for failure to allege sufficient monetary or property loss, as attorneys' fees are not cognizable for such claim.  (*Id.*)

Plaintiff then filed the instant SAC.  Her brother and sister-in-law are no longer Plaintiffs in this action.  The SAC includes three causes of action: (1) breach of the covenant of good faith and fair dealing; (2) breach of contract; and (3) violation of the Unfair Business Practices Act, Cal.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Bus. & Prof. Code § 17200.  Plaintiff seeks damages, attorneys' fees, and an order enjoining

2  Defendant from foreclosing on Plaintiff's home.  Defendant has renewed its motion to dismiss,

3  contending that the SAC still fails to state a claim upon which relief may be granted.  Because the

4  causes of action for breach turn largely on whether Plaintiff can plead her own performance under

5  the contract, after oral argument, and upon Court order, the parties submitted supplemental

6  briefing addressing (1) whether a plaintiff substantially performs her contractual obligations when

7  she has a subjective belief that her performance is sufficient; and (2) the scope and effect of the

8  bankruptcy discharge on Plaintiff's post-petition arrears—specifically, whether the bankruptcy

9  discharge rendered Plaintiff's post-petition performance complete as a matter of law.  (Dkt. No.

10  41.)

11                                     **LEGAL STANDARD**

12         A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the

13  sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief

14  that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has

15  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

16  reasonable inference that the defendant is liable for the misconduct alleged. The plausibility

17  standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

18  a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations

19  omitted).  Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short

20  and plain statement of the claim showing that the pleader is entitled to relief, in order to give the

21  defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550

22  U.S. at 554 (internal citations and quotations omitted).

23         For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in

24  the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving

25  party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

26  However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a

27  plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

28  and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009).

Generally, when a complaint is dismissed, "leave to amend shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); *see* Fed. R. Civ. P. 15(a). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

Defendant moves to dismiss all three of Plaintiff's causes of action for failure to state a claim upon which relief may be granted. Before addressing the adequacy of each cause of action in turn, the Court will address first whether the SAC sufficiently alleges that Plaintiff substantially performed, as this is a required element for Plaintiff's first two contract-based causes of action.

## I.    Plaintiff's Performance

The first two causes of action—breach of the covenant of good faith and fair dealing and breach of contract—both require that Plaintiff plead her own performance under the contract. *See Marks v. Chicoine*, No. C 06-06806 SI, 2007 WL 160992, at *6 (N.D. Cal. Jan. 18, 2007) (citation omitted) (breach of implied covenant requires pleading plaintiff's performance); *Enuke v. Am.'s Wholesale Lender*, No. CV-11-6661 PA (SPx), 2011 WL 11651341, at *9 (C.D. Cal. Dec. 18, 2011) ("[T]o state a claim for breach of the implied covenant, a plaintiff must allege performance or excuse for nonperformance under the contract."); *Labra v. Cal-W. Reconveyance Corp.*, no. C 09-2537-PJH, 2010 WL 8899537, at *9 (N.D. Cal. Mar. 11, 2010) (a plaintiff must allege performance under the contract to state a claim for breach of contract). And indeed, throughout the SAC and the earlier iterations of the pleadings, Plaintiff repeatedly alleges that she substantially performed under the contract. (*See, e.g.*, Dkt. No. 33 ¶¶ 29, 34 (Plaintiff "substantially performed under the loan agreements").)

United States District Court
Northern District of California

The Court dismissed the breach of contract and breach of implied covenant claims from the FAC precisely because Plaintiff had failed to plausibly allege that she was not in breach herself. Specifically, the Court found that nothing in the FAC explained why, especially in light of Plaintiff's bankruptcy counsel's admission that Plaintiff was in post-petition arrears by at least $100,000, Plaintiff was not in breach of the loan agreement herself, which would be fatal to both of the first two causes of action alleging that Defendant is in breach. (Dkt. No. 32 at 2.) The Court ordered Plaintiff to include in the SAC factual allegations explaining why she was not in breach of the contract given her acknowledgement of significant post-petition arrears. (*Id.*)

In the SAC, Plaintiff now alleges that, pursuant to the parties' May 2013 stipulation, Defendant withdrew the Proof of Claim contending that Plaintiff was $100,000 in post-petition arrears and instead agreed to provide an accounting of the total amount of post-petition arrears. (Dkt. No. 33 ¶¶ 14-15.) Because Defendant never provided such an accounting, and never again asserted in the bankruptcy proceeding that Plaintiff was in default on post-petition obligations, Plaintiff believed that she did not have any post-petition arrears when her debt was discharged. (*Id.* ¶ 15.) In Plaintiff's view, given Defendant's silence after it withdrew its proof of claim and agreed to provide a further accounting, this "tends to show that, after further review of the loan, post-petition arrears did not exist, otherwise, Defendant likely would have brought such default to the Court's attention." (Dkt. No. 36 at 10.) In her briefing on the motion to dismiss and at oral argument, Plaintiff appears to acknowledge that it is *possible* that she did not sufficiently perform inasmuch as she still owed post-petition arrears, but insists that given Defendant's silence following the stipulation, she has sufficiently alleged that there was no post-petition arrears and she substantially performed. (*Id.*) Put another way, Plaintiff's position is that she believed that she had cured her default and was substantially performing and, in any event, contends that the bankruptcy discharge cured all of her mortgage-related debts, including post-petition arrears. The Court ordered supplemental briefing on these issues.

In her supplemental submission, Plaintiff fails to cite any authority for the proposition that a plaintiff substantially performs under a contract based on her mere belief that her performance is sufficient; the Court deems this to be a concession that such is not the case. Indeed, even a

contractual provision calling for performance to the satisfaction of one party calls for performance satisfactory to a reasonable person.  *See Collins v. Vicktor Manor, Inc.*, 47 Cal.2d 875, 882 ((1957); *FEI Enters., Inc. v. Yoon*, 194 Cal. App. 4th 790, 800 (2011).  Here, the contract was not for performance satisfactory to Defendant, but rather performance plain and simple, an even more objective standard.  What is more, whether a party is in breach turns on the terms and meaning of the contract, not the party's subjective belief.  In a similar vein, a party need not intend to violate a contract to give rise to liability; instead, a mere negligent breach is enough even where the party had neither knowledge, intent, nor belief of her mistake.  *See No. Am. Chem. Co. v. Super. Ct.*, 59 Cal. App. 4th 764, 774 (1997) (collecting cases).  At bottom, Plaintiff has offered no authority, and the Court has found none, to support her contention that her mere subjective belief in her own performance is enough to plausibly establish that she substantially performed.

Nor has Plaintiff established that the bankruptcy discharge eliminated her post-petition arrears as a matter of law, rendering her performance substantial.  Plaintiff does not address this point at all in her supplemental submission.  Defendant, for its part, provides substantial authority that, to the contrary, a Chapter 13 bankruptcy discharge only allows a petitioner to cure existing prepetition accrued debt, but not to discharge or cure unaccrued post-petition arrears.  "Chapter 13 allows a mortgagor debtor to cure a prepetition acceleration of home mortgage debt triggered by default."  *In re Metz*, 820 F.2d 1495, 1497 (9th Cir. 1987) (citation omitted).  Section 1322(b)(2) of the Bankruptcy Code prohibits a bankruptcy plan from modifying the terms of a secured loan on the borrowers' principal residence.  11 U.S.C. § 1322(b)(2); *Nobelman v. Am. Savs. Bank*, 508 U.S. 324, 327-28 (1993).  Because of this statutory provision, "[a]lthough a debtor cannot 'modify' (e.g., change the length of the contract or amount of the balance or balloon payment) a claim secured only by the debtor's principal residence, courts have uniformly held that [Section § 3322(b)(2)] allows the debtor to 'cure' (i.e., pay or bring current) arrearages on the debt and thereby reinstate the debt."  *Id.* (citations omitted).  Thus, absent certain special procedures not applicable here, a debtor can only address financial obligations due and owing up until the time the petition was filed, and cannot obtain the benefit of a discharge order that is forward-thinking, changing the scope of her obligation to the lender moving forward.  *See, e.g., Bank of Am., N.A. v.*

9

1    *Garcia (In re Garcia)*, 276 B.R. 627, 635 (Bankr. D. Ariz. 2002).

2           Bankruptcy treatises explain that "[c]uring long-term debts under [11 U.S.C. §] 1322(b)(5)

3    does *not* enable the debtor to modify the terms of the debt, except to 'spread out' payment of the

4    *arrearages* for a 'reasonable time.' [*i.e.*,] the debtor must continue making *payments as they come*

5    *due under the original loan terms* during the life of the plan and thereafter until fully paid." 4

6    March, Ahart & Shapiro, Cal. Practice Guide: Bankruptcy, ¶ 13:443 (2015) (emphasis in original).

7    Put another way, in a chapter titled "Nondischargeable debts in Chapter 13," another bankruptcy

8    guide explains:

9                      The scope of the Chapter 13 discharge is described in [Bankruptcy]
                     Code § 1328(d) as excluding three large groups of obligations: (1)
10                    any obligations related to a cure of any default and the maintenance
                     of payments on any secured or unsecured claim on which the final
11                    payment is due after the date on which the final payment under the
                     plan is due . . . .  Therefore, the debtor's personal obligation on a
12                    real estate mortgage will not be extinguished by an order of
                     discharge under Chapter 13[.]
13

14    Williams, 2 Bankruptcy Practice Handbook § 8:139 (2d ed. 2015).[2]  And indeed, Plaintiff appears

15    to have abandoned her argument that a Chapter 13 discharge wipes out post-petition arrearages.[3]

16    Thus, Plaintiff's FAC as written fails to plausibly allege that she substantially performed under the

17    contract she seeks to enforce.

18           However, in her supplemental submission, Plaintiff for the first time argues that

19    Defendant's conduct in the bankruptcy proceedings excused her performance—*i.e.*, that Plaintiff

20    did not substantially perform, but that substantial performance was excused.  California law

21    _____

22    [2] Notably, the post-petition debt might have been discharged "if the case were pending under
     Chapters 7 or 11, if the debtor's plan provided for either a cure of any prepetition default, or the
23    maintenance of regular payment under the mortgage for any period of time past the date of the last
     payment required by the plan."  Williams, 2 Bankruptcy Practice Handbook § 8:139 (2d ed. 2015).
24    Such is not the case here, where Plaintiff filed for Chapter 13 bankruptcy.

25    [3] To the extent that Plaintiff argues that a Chapter 13 discharge cures a petitioner's default on a
     primary residential mortgage altogether—including both pre- and post-petition default—her
26    reliance on *In re Metz*, 820 F.2d 1495 (9th Cir. 1987), is misplaced.  In *In re Metz*, the court noted
     that the Chapter 13 discharge cures prepetition arrearages and reinstates the payment terms of the
27    debt.  820 F.2d at 1497 (citing *In re Seidel*, 752 F.2d 1382, 1386 (9th Cir. 1985)).  Thus, Plaintiff's
     Chapter 13 discharge cured her pre-petition arrearages.  But Plaintiff still owes money on the
28    arrearages accruing during and after the petition under the original payment terms of the debt, and
     *In re Metz* does not hold otherwise.

United States District Court
Northern District of California

1    requires a plaintiff to identify excuses for non-performance with specificity in the pleadings.

2    *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1389 (1990); *see also* 4

3    Witkin, Cal. Proc. 5th (2008) Pleading § 533.  There are several grounds upon which performance

4    of a contract may be excused, including waiver and estoppel.  *See Platt Pac., Inc. v. Andelson*, 6

5    Cal.4th 307, 311 (1993).  For mortgage cases, some courts have found that allegations of a

6    lender's acquiescence to a borrower's insufficient performance are enough to plausibly allege

7    excuse for non-performance or waiver of performance.  *See, e.g.*, *Schneider v. Bank of Am., N.A.*,

8    No. CIV. S-11-2953 LKK/DAD PS, 2014 WL 2118327, at *11 (E.D. Cal. May 21, 2014) (finding

9    excuse or waiver of performance adequately alleged where plaintiff alleged that the defendant

10   failed to act for 9 years while the plaintiff failed to produce insurance as his mortgage loan

11   required).

12          Plaintiff's new theory of excuse for non-performance sounds in both waiver and estoppel.

13   Because a discharge reinstates the debt under the original payment terms, a secured creditor, like

14   Defendant, in a Chapter 13 bankruptcy proceeding must notify the debtor and bankruptcy trustee

15   of any change in secured payment amount.  And in fact, Federal Rule of Bankruptcy Procedure

16   3002.1(b) imposes on creditors an obligation to report such changes.  *See* Fed. R. Bankr. Proc.

17   3002.1(b); *see, e.g.*, *In re Tolios*, 491 B.R. 886, 891 (Bankr. N.D. Ill. 2013).  Plaintiff contends

18   that Defendant's failure to provide notice of increases in Plaintiff's monthly payments during the

19   bankruptcy proceeding excused Plaintiff from having to pay the increased amounts and, relatedly,

20   that Defendant's abandonment of its request for post-petition arrearage during the course of the

21   bankruptcy proceeding constituted waiver of Defendant's right to any post-petition arrears.[4]

22   While Plaintiff has not alleged excuse for non-performance in the SAC and the Court therefore

23   cannot consider such allegations as part of the operative pleading, the Court will nevertheless

24   consider the merits of such a claim to determine whether to grant Plaintiff leave to amend her

25   claims.

26

27   _____

      [4] Plaintiff initially brought a separate cause of action against Defendant for breach of Federal Rule
28   of Bankruptcy Procedure 3002.1(i), but the Court dismissed the claim because no such cause of
      action exists.  (Dkt. No. 32 at 2.)

                                                      11

United States District Court
Northern District of California

1    First, a violation of the bankruptcy rule does not excuse Plaintiff's performance.  Rule

2    3200.1(b) is a procedural rule only.  It provides a remedy for violations: specifically, it permits the

3    bankruptcy court to preclude the party from presenting the omitted information during the case or

4    to award other appropriate relief.  Fed. R. Bankr. Proc. 3002.1(i).  These remedies are to be

5    obtained during the course of the bankruptcy proceeding itself—not in a separate action.  If

6    violation of this procedural rule could excuse a borrower's ongoing compliance with a residential

7    mortgage loan, it would conflict with Bankruptcy Code § 1322(b)(2), discussed above, by

8    allowing the bankruptcy court to fashion a remedy that would modify a borrower's future loan

9    obligations.  For these reasons, Defendant's violation of Bankruptcy Rule 3200.1(b) does not

10   excuse Plaintiff's contractual obligation to submit complete monthly mortgage payments.

11   The same is not necessarily so for Plaintiff's argument that Defendant's abandonment of

12   its request for post-petition arrearage during the course of the bankruptcy proceeding prevents—or

13   estops—Defendant from seeking such amounts and therefore waives Plaintiff's performance of

14   this contractual requirement.  On the one hand, Plaintiff is unable to cite a single case to support

15   her position that this condition excuses her performance.  But neither has Defendant cited any

16   authority to show that these alleged circumstances do not and cannot excuse performance, and

17   Defendant carries the burden on a 12(b)(6) motion to dismiss.  Thus, the Court cannot conclude at

18   this stage of litigation that leave to amend to add this theory would be futile.  The Court is not

19   persuaded that it should not consider Plaintiff's excuse for non-performance theory because it is

20   inconsistent with the allegations of the SAC; indeed, other courts have skipped amendment

21   altogether and construed allegations of substantial performance as excuse for non-performance in

22   mortgage cases.  *See, e.g.*, *Boring v. Nationstar Mortg., LLC*, No. 2:13-cv-01404-GEB-CMK,

23   2014 WL 5473118, at *5 (E.D. Cal. Oct. 28, 2014) (where the plaintiff alleged his substantial

24   performance, concluding that "Plaintiff's allegations are sufficient to allege excuse of

25   performance, which is an alternative to alleging substantial performance under the contract")

26   (citing Cal. Civ. Code § 1511).  The Court will therefore grant Plaintiff leave to amend her claims

27   to plead that her performance is excused.  The Court will address the merits of each claim now.

28

United States District Court
Northern District of California

1    **II.      First Cause of Action: Breach of the Covenant of Good Faith and Fair Dealing**

2           Plaintiff's first cause of action is for breach of the implied covenant of good faith and fair

3    dealing.  The gravamen of Plaintiff's claim is that in May 2014, although Plaintiff was ready,

4    willing and able to make loan payments, Defendant interfered with her ability to perform under the

5    contract by telling her that she could not make payments while her loan modification application

6    was pending.  (Dkt. No. 33 ¶ 30.)  As a result, Plaintiff alleges that her credit has been

7    detrimentally impacted, she now owes late fees she would not have accrued but for Defendant's

8    interference, and she incurred "costs to save her home, including attorney's fees, and other

9    damages."  (*Id.* ¶ 31.)

10          "California law implies a covenant of good faith and fair dealing in every contract."

11   *Mundy v. Household Fin. Corp.*, 885 F.2d 542, 544 (9th Cir. 1989) (citation omitted).  "The

12   implied covenant imposes certain obligations on contracting parties as a matter of law—

13   specifically, that they will discharge their contractual obligations fairly and in good faith."  *Id.*

14   (citation omitted); *see also Koehrer v. Super. Ct.*, 181 Cal. App. 3d 1155, 1169 (1986) (same).  A

15   plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must

16   allege the following elements: "(1) the existence of a contract; (2) the plaintiff did all, or

17   substantially all of the significant things the contract required; (3) the conditions required for the

18   defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's

19   right to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's

20   conduct."  *Marks v. Chicoine*, No. C 06-06806 SI, 2007 WL 160992, at *6 (N.D. Cal. Jan. 18,

21   2007) (citation omitted).

22          When a plaintiff brings both a breach of contract and a breach of the implied covenant

23   claim, the latter will be superfluous and subject to dismissal if both claims cite the same

24   underlying breach.  *See Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014)

25   (citation omitted).  But a plaintiff may bring both claims if they are based on two different

26   breaches.  *Id.*; *see also Daly v. United Healthcare Ins. Co.*, No. 10-CV-03032-LHK, 2010 WL

27   4510911, at *4 (N.D. Cal. Nov. 1, 2010).  Here, the implied covenant claim is based on

28   Defendant's instructing Plaintiff not to pay in May 2014, whereas the breach of contract claim is

based on Defendant's failure to notify Plaintiff of payment changes and its collection of excess funds into an escrow account.  As they are based on two separate breaches, the implied covenant claim is not superfluous and Plaintiff may bring it in tandem with her breach of contract claim. *See Landucci*, 65 F. Supp. 3d at 716 (citation omitted).

Turning to the elements of the claim, Plaintiff has adequately alleged the existence of a contract: the Deed of Trust.  The Court already addressed Plaintiff's performance, and will assume that excuse for non-performance is adequately alleged for the purposes of this analysis.  Defendant appears to concede that all conditions required for Defendant's performance had occurred, as it does not address this factor.  Instead, Defendant's challenge largely focuses on the fourth element: that defendant interfered with Plaintiff's rights under the contract.  An implied covenant claim requires the plaintiff to "show that the conduct of the defendant, whether or not it constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement."  *Careau*, 222 Cal. App. 3d at 1395.

Defendant's challenge to its alleged interference is twofold.  First, Defendant contends that the implied covenant cannot be used to imply a term that would vary an explicit contract requirement, and therefore Plaintiff cannot use the implied covenant to "vary" her contractual obligation to make a payment.  (*See* Dkt. No. 34 at 11-12.)  But this is not what Plaintiff alleges. Instead, she acknowledges that her contractual obligation in the Deed of Trust and Promissory Note to make monthly payments endured, but that Defendant interfered with her ability to fulfill that obligation.[5]

The parties' briefs cite a number of cases in which plaintiff-borrowers brought claims for

---

[5] This would appear to conflict with Plaintiff's new theory that her performance of her monthly payment obligation was excused by Defendant's conduct during the course of the bankruptcy proceeding; however, Plaintiff continued to make her monthly payments and the excuse for non-performance appears to relate only to the *amount* of the payment, not the fact that Plaintiff still had an obligation to make a monthly payment at all.

United States District Court
Northern District of California

1   breach of the implied covenant with similar factual allegations: *Fevinger v. Bank of. Am., N.A.*,

2   No. 5:13-cv-04839-PSG, 2014 WL 3866077, at *5 (N.D. Cal. Aug. 4, 2014); *Ha*, 2014 WL

3   3616133, at *9; *Dias v. JP Morgan Chase, N.A.*, No. 5:13-CV-05327-EJD, 2014 WL 2890255, at

4   *5-6 (N.D. Cal. June 25, 2014); *Ren v. Wells Fargo Bank, N.A.*, No. 3:13-cv-0272 SC, 2013 WL

5   5340388, at *2 (N.D. Cal. Sept. 23, 2013); *Franczak v. Suntrust Mortg. Inc.*, No. 5:12-cv-01453-

6   EJD, 2013 WL 4764327, at *5 (N.D. Cal. Sept. 5, 2013); *Harris v. Wells Fargo Bank, N.A.*, No.

7   12-cv-05629-JST, 2013 WL 1820003, at *9-10 (N.D. Cal. Apr. 30, 2013); *Harvey v. Bank of Am.,*

8   *N.A.*, No. 12-3238 SC, 2013 WL 632088, at *2-3 (N.D. Cal. Feb. 20, 2013).

9         Despite similar factual allegations, the claims for breach of the implied covenant in

10   *Fevinger*, *Ha*, *Dias*, *Ren*, and *Franczak* did not survive a motion to dismiss, while the claims in

11   *Harvey* and *Harris* did.  As the *Dias* court explained, "[t]he cases are most clearly distinguishable

12   in that *Harvey* and *Harris*, unlike the other cases, featured plaintiffs who alleged that the

13   defendants engaged in 'conscious and deliberate' acts that frustrated the plaintiffs' right to benefit

14   from the contract."  *Dias*, 2014 WL 2890255, at *5.  To that end, to plead a plausible implied

15   covenant claim, the allegations "must show that the conduct of the defendant, whether or not it

16   also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to

17   discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or

18   negligence but by a conscious and deliberate act, which unfairly frustrates the agreed common

19   purposes and disappoints the reasonable expectations of the other party thereby depriving the party

20   of the benefit of the agreement."  *Careau*, 222 Cal. App. 3d at 1395.  Thus, "this type of implied

21   covenant claim fails unless the defendant actively hindered a plaintiff's obligation to pay his

22   loans."  *Franczak*, 2013 WL 4764327, at *5 (citation omitted).  For example, in *Diaz*, the

23   plaintiffs' lender informed them that they could not be granted a loan modification because they

24   were current on their payments, so they stopped making payments in order to get a loan

25   modification.  2014 WL 2890255, at *5.  Similarly, in *Franczak* the district court rejected the

26   plaintiff's implied covenant claim and denied leave to amend where the defendant encouraged

27   plaintiff "to miss loan payments in order to qualify for a loan modification," because "in the end, it

28   was [p]laintiff's choice to pursue a modification."  2013 WL 4764327, at *5.  The court suggested

United States District Court
Northern District of California

15

that what might have stated a claim would be allegations that the defendant "force[d] Plaintiff into an unwanted modification, refuse[d] to accept valid loan payments, or den[ied] Plaintiff the ability to sell the property without justification."  *Id.*

So it was in *Harris* and *Harvey*.  In *Harris* the plaintiff alleged that the defendant refused to accept Plaintiff's monthly payments even though she attempted to submit them, and had promised her that she could withhold her monthly payments without incurring late fees or risking foreclosure or a negative credit report while her loan modification application was pending.  2013 WL 1820003, at *2, 9.  Similarly, in *Harvey* the lender directed the plaintiff not to make payments in order to qualify for a loan modification and likewise assured the plaintiff that failure to pay would not result in foreclosure or late fees.  2013 WL 632088, at *2-3.  The lenders' promises that negative consequences like foreclosure or late fees would not flow appears to be a distinguishing characteristic.

Here, Plaintiff alleges that she requested a loan modification and submitted a complete application in May 2014.  (Dkt. No. 33 ¶ 20.)  Thereafter, Plaintiff continued to attempt to make her monthly payments and wanted to do so, but Defendant repeatedly told her she would not and could not make such payments while her loan modification application was pending.  (*Id.*)  Nevertheless, Plaintiff continued to send documents in support of her loan modification application and, thus, did not make her monthly payments even though she was ready, willing, and able to do so.  (*Id.* ¶¶ 21, 30.)  Plaintiff requested the loan modification, so there is no forced loan modification here, nor is it alleged that Defendant denied her the ability to sell the Property.  Ultimately, this is just another iteration of the *Fevinger*, *Ha*, *Dias*, *Ren*, and *Franczak* scenario:  Plaintiff wanted the loan modification, and when she learned that she could not make monthly payments while her application was pending, she chose to move forward with that arrangement, continuing to augment her application instead of returning to her monthly payment schedule.  Although the timing is different—in those cases, the plaintiffs were informed *before* they submitted a loan application that they would have to stop making monthly payments, whereas here the plaintiff applied and then learned that she could not make monthly payments—the effect is the same:  the plaintiffs were faced with a choice either to seek a loan modification or continue on with

United States District Court
Northern District of California

1    monthly payments as is.  They chose to pursue the loan modification, and therefore Defendant is

2    not liable for interfering with Plaintiff's contractual obligation to pay.  Tellingly, the critical

3    allegations in *Harris* and *Harvey* that brought the cases over the breach of implied covenant

4    threshold are absent here: there is no allegation here that Defendant promised Plaintiff that there

5    would be no unfavorable consequences from her failure to make monthly payments while her

6    application was pending.  *Cf. Harris*, 2013 WL 1820003, at *2, 9; *Harvey*, 2013 WL 6320882, at

7    *2-3.  In the absence of factual allegations that demonstrate that Defendant engaged in a

8    "conscious and deliberate act" to hinder Plaintiff's performance rather than complied with

9    Plaintiff's choice to pursue a loan modification, Plaintiff has failed to plausibly allege that

10    Defendant interfered with her contractual obligation to make monthly loan payments.

11        In addition, Defendant urges that Plaintiff has not adequately alleged the fifth element of a

12    breach of the implied covenant claim: that she was damaged by Defendant's alleged conduct.  *See*

13    *Marks*, 2007 WL 160992, at *6.  In the SAC, Plaintiff alleges that her credit was detrimentally

14    impacted due to Defendant's conduct and that she owes late fees.  (Dkt. No. 33 ¶ 31.)  Damages in

15    the form of damaged credit and various fees and penalties are recoverable.  *See, e.g.*, *Schulken v.*

16    *Wash. Mut. Bank*, No. C 09-02708 JW, 2009 WL 4173525, at *6 (N.D. Cal. Nov. 19, 2009).  If

17    Plaintiff had alleged breach of the implied covenant, the late fees she alleges may well have been

18    enough for damages, but not the harm to credit, which should be pleaded with particularity under

19    Rule 9(g).  *See Lundgren v. Freeman*, 307 F.2d 104, 115 (9th Cir. 1962).  But, as written, the SAC

20    does not sufficiently connect the alleged breach with the negative-credit damages; in particular, it

21    fails to demonstrate how Defendant's alleged breach of the implied covenant damaged Plaintiff's

22    credit but Plaintiff's own apparent default on her mortgage payment obligation did not.  Plaintiff

23    offers additional explanation in her opposition, but the Court does not consider facts alleged for

24    the first time in a plaintiff's opposition to a motion to dismiss.  *See Broam v. Bogan*, 320 F.3d

25    1023, 1026 (9th Cir. 2003) (citation omitted).  This analysis is of no consequence, however, as

26    Plaintiff has failed to allege a breach of the implied covenant in the first instance.  Plaintiff's

27    breach of the implied covenant claim is therefore dismissed.

28        Although this is the second time Plaintiff has amended her claims, the Court will grant

1   Plaintiff leave to amend her breach of the implied covenant claim consistent with the discussion

2   above because this is the first time the Court has identified, in writing, the deficiencies with this

3   claim, since Plaintiff filed her FAC as of right and the Court's Order dismissing that complaint

4   focused on performance.

5   **III.    Second Cause of Action: Breach of Contract**

6         In the second cause of action, Plaintiff alleges that Defendant breached two provisions of

7   the governing loan documents: Section 4(H) of the Promissory Note, by failing to provide Plaintiff

8   with timely notice of change in her monthly payments; and Section 2(b) of the Deed of Trust by

9   requiring Plaintiff to pay more than the amount permitted by law into an escrow account.  (Dkt.

10  No. 33 ¶¶ 36-37.)

11        A plaintiff asserting a breach of contract claim must allege facts sufficient to support the

12  following elements: (1) existence of a contract, (2) performance by the plaintiff or excuse for

13  nonperformance, (3) breach by the defendant, and (4) resulting damages.  *First Commercial*

14  *Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).  As discussed above, Plaintiff has alleged

15  facts that plausibly establish the existence of a contract—namely, the contractual obligations set

16  forth in the Promissory Note and Deed of Trust—and, at least for the purposes of the instant

17  motion to dismiss, her own performance.  The Court will address each alleged breach in turn.

18        A.    Breach of Section 4(H) of the Promissory Note

19        Section 4(H) provides in relevant part that "Lender will deliver or mail to me a notice of

20  any changes in the amount of my monthly payment, called 'Payment Change Notice,' before each

21  Payment Change Date.  The Payment Change Notice will include information required by law."

22  (*Id.*)  Plaintiff alleges that Defendant failed to provide a timely—*i.e.*, issued before the change—

23  notice of payment change from 2007 to 2013.  (*Id.*)  Specifically, Plaintiff's payments had

24  changed to $4,200 in September 2011 and to $3,900 in March 2012, but she did not receive notice

25  of either change until November 2012.  (*Id.*)  As a result, Plaintiff was unaware that Defendant

26  deemed her monthly payments insufficient.  (*Id.*)  Had she been aware of the change, Plaintiff

27

28

United States District Court
Northern District of California

18

would have been able to pay the increased payments.[6]  (*Id.*)

As discussed above, excuse for non-performance may be adequately pleaded in her amended pleading.  It is not clear from the SAC which, if any, of Defendant's failures to provide notice of increased payments occurred after Defendant's conduct had waived or excused Plaintiff's own performance on the contract, and Plaintiff cannot recover for Defendant's alleged breach that occurred while she was still in default.  *See Labra*, 2010 WL 889537, at *9; *Kirkeby v. JP Morgan Chase Bank, N.A.*, No. 13cv377 WQH-MDD, 2014 WL 7205634, at *11 (S.D. Cal. Dec. 17, 2014).  Defendant appears to concede for the purposes of the motion to dismiss that it did not strictly comply with Section 4(H) inasmuch as it failed to provide notice to Plaintiff in advance of each payment change; indeed, Defendant never argues otherwise.  However, Plaintiff cannot recover for Section 4(H) breaches until such time as her performance was excused.  As the SAC does not allege excuse for nonperformance, let alone when such excuse arose, it follows that the SAC does not allege that Plaintiff's performance was excused before Defendant's breach.  For this reason alone this breach of contract claim must be dismissed.

Plaintiff also does not adequately allege how she was injured by the failure to provide her with notice of the increased payments given that she now admits that she was provided notice at certain times and she nonetheless failed to make the higher payments.  Plaintiff responds by citing to paragraph 38 of the SAC and contending that she had to pay additional late fees.  But paragraph 38 does not mention late fees, and simply mentioning them does not plausibly explain how Plaintiff was damaged.  Given the interplay with the bankruptcy proceedings, Plaintiff's claim is complex.  Any further amended complaint must set forth in a straightforward way how and when Plaintiff's performance was excused, how and when Defendant breached the contract, and how that breach injured Plaintiff.[7]

---

[6] The Court notes that the alleged payment change in March 2012 was actually a *decrease*; nevertheless, because the amount is still higher than what Plaintiff had been paying (just over $2400), the Court will consider it an increase.

[7] Defendant also contends that Plaintiff cannot recover for the breach because that would render the agreement an executory contract.  *See In re Texscan Corp.*, 976 FF.2d 1269, 1272 (9th Cir. 1992) (defining an executory contract as "one on which performance is due to some extent on both sides" and where "the obligations of both parties are so far unperformed that the failure of either

United States District Court
Northern District of California

Defendant has not established as a matter of law that the Promissory Note itself limits Defendant's liability for failure to make payment adjustments.  The provision at issue states:

> If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time.  I also agree not to hold Lender responsible for any damage to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial repayment of unpaid Principal.

(Dkt. No. 35 at 82.)  Defendant has not shown that this provision applies to the lender failing to notify a borrower of a completed increase in payment; instead, the provision appears to contemplate the reverse: the lender's failure to make the adjustment in the first instance.  However, for the reasons explained above, this breach of contract claim necessarily fails.

B.     Breach of Section 2(B) of the Deed of Trust

Plaintiff's second theory of breach arises out of Section 2(B) of the Deed of Trust, which provides that if Defendant sets up an escrow account, "Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ('RESPA')."  (Dkt. No. 33 ¶ 37.) RESPA, in turn, limits the amount a lender may require a borrower to deposit into an escrow account.  Specifically, the lender may not require a borrow to deposit sums into an escrow account that exceed one-twelfth of the total amount of the estimate taxes reasonable anticipated to be paid over the course of one year.  12 U.S.C. § 2609(a)(2)(A).  Despite these requirements, Plaintiff alleges that Defendant required Plaintiff to pay $771.07 per month into an escrow account, totaling an annual payment of $9,252.84, when her yearly property tax totaled only $5,000.  (Dkt. No. 33

party to complete performance would constitute a material breach and thus excuse the performance of the other") (citation omitted).  To be sure, Plaintiff failed to disclose the loan agreement as an executory contract, so she would be estopped from arguing as much here.  But Plaintiff is not arguing that it is an executory contract; instead, the SAC allegations indicate that the parties had largely been performing their contractual obligations for some time, not that their performance was so far unperformed that any breach is material.

United States District Court
Northern District of California

1   ¶ 37.)  Thus, Plaintiff seeks a refund for the escrow payments she made to Defendant above the

2   authorized amount.  (*Id.*)

3          Defendant contends that Plaintiff fails to state a claim for two reasons: (1) because Plaintiff

4   is precluded from alleging any RESPA violation from the improper escrow amounts because the

5   parties argued this issue during the course of the bankruptcy proceedings; and (2) the statute of

6   limitations bars the claim because it existed before she filed her bankruptcy petition in 2007.

7   (Dkt. No. 34 at 15-16.)

8          The bankruptcy discharge does not preclude Plaintiff from bringing a breach of contract

9   claim based on the escrow error.  A bankruptcy discharge can have a preclusive effect.  *See In re*

10  *Sasson*, 424 F.3d 864, 872 (9th Cir. 2005).  For example, if the bankruptcy discharge has already

11  determined the amount of a discharged debt, the parties cannot relitigate that amount in another

12  forum.  *See id.*  Under California law, issue preclusion is applicable when the issue or fact to be

13  decided was actually litigated in a previous suit, a final judgment on the merits was entered, the

14  party against whom the doctrine is to be invoked had a full and fair opportunity to litigate the

15  matter and actually litigated it, and the issue or fact was essential to the prior judgment.  *See*

16  *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341-43 (1990)

17         Here, Plaintiff raised the same escrow issue she now raises in the breach of contract claim

18  in her objection to Defendant's proof of claim.  (*See* Dkt. No. 35 at 95.)  But, pursuant to the

19  stipulation that the parties entered, which became part of the final bankruptcy discharge, Plaintiff

20  withdrew that objection.  (*See id.* at 118.)  The bankruptcy court ordered Defendant to apply

21  excess amounts from Plaintiff's escrow account to her outstating pre-petition arrearage claims and,

22  if any is left over, to outstanding post-petition arrearage, but the bankruptcy court did not resolve

23  the question of how to determine what amounts were in excess.  (*See id.*)  Thus, the parties did not

24  "actually litigate" the escrow issue, nor was it essential to the bankruptcy court's final discharge,

25  so issue preclusion does not bar Plaintiff from re-raising the issue in this action.

26         The statute of limitations issue is more problematic for Plaintiff.  In the SAC, she alleges

27  that "for a period of four years" Defendant improperly calculated her escrow payments to be

28  unlawfully high in violation of Section 2(B) and RESPA.  (Dkt. No. 33 ¶ 37.)  Elsewhere she

United States District Court
Northern District of California

alleges that this improper escrow calculation occurred in 2007, prior to her default and filing of the bankruptcy petition. (*Id.* ¶ 10.)  The stipulation the parties filed during their bankruptcy proceedings indicates that the improper escrow collection occurred in 2006, as well. (Dkt. No. 35 at 118.)  The statute of limitations for written contract claims under California law is four years. Cal. Code. Civ. P. § 337.  Plaintiff filed the instant complaint in 2015, 9 years after the first reference of improper escrow collection.  There are no allegations that the improper escrow calculation was ongoing and no date provided for how long it lasted.  Thus, as written, Plaintiff's breach of contract claim premised on the escrow/RESPA violations is untimely and, therefore, fails to state a claim upon which relief may be granted.  Plaintiff shall have leave to amend this claim if she can, in good faith and consistent with her obligations under Rule 11, cure this deficiency.  Any amended complaint must specifically allege when the improper escrow payments began and when they ended.

## IV.    Third Cause of Action: Unfair Business Practices

Plaintiff's third cause of action alleges that Defendant's conduct violates California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210. (Dkt. No. 33 ¶¶ 39-44.)  The UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  Cal. Bus. & Prof. Code § 17200.  Each prong—unlawful, unfair, and fraudulent—is independently actionable. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007); *Cel-Tech Comm'cns, Inc. v. Los Angeles Cellular*, 20 Cal. 4th 163, 185 (1999).

In the SAC, Plaintiff alleges in a conclusory manner that Defendant's conduct violates all three prongs of the UCL. (Dkt. No. 33 ¶ 40.)  However, the SAC's more specific allegations only allege that Defendant's conduct violates the "unlawful" prong. (*Id.* ¶ 41 ("Defendant's breach of the covenant of good faith and fair dealing constitutes *unlawful* business practices[.]") (emphasis added); *id.* ¶ 42 ("Defendant's breach of contract constitutes *unlawful* business practices[.]") (emphasis added); *id.* ¶ 43 ("Defendant's violations of Violation of [sic] Federal Rules of Bankruptcy Procedure § 3001.2, *et seq.*, constitutes *unlawful* business practices[.]") (emphasis added).)  The Court therefore construes the SAC as bringing an unlawful business practices claim.

"An unlawful business practice or act within the meaning of the UCL is an act or practice,

1   committed pursuant to business activity, that is at the same time forbidden by law." *Pinel v.*

2   *Aurora Loan Servs., LLC*, 814 F. Supp. 2d 930, 937 (N.D. Cal. 2011) (internal quotation marks

3   omitted) (quoting *People ex rel. Harris v. Pac. Anchor Transp., Inc.*, 195 Cal. App. 4th 765, 773

4   (2011)).   The "unlawful" prong of the UCL covers a wide range of conduct.   *See CRST Van*

5   *Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) (internal quotation

6   marks and citations omitted).  However, the UCL is not a standalone claim, so where it is

7   premised on the same acts alleged in other causes of action in the complaint, and those causes of

8   action fail, the UCL claim likewise must be dismissed because the plaintiff has not adequately

9   alleged any predicate unlawful acts.  *See Lomely v. JP Morgan Chase Bank, N.A.*, No. 12-CV-

10  1194, 2012 WL 4123403, at *5 (N.D. Cal. Sept. 17, 2012) (dismissing a UCL "unlawful" prong

11  claim because the predicate claim on which it relied had also been dismissed).   Thus, the UCL

12  claim premised on Defendant's breach of contract and breach of the covenant of good faith and

13  fair dealing fails as pleaded because the underlying common law claims fail.

14        Moreover, even if the breach of contract and breach of the implied covenant claims did

15  survive, an "unlawful" business practices claim usually cannot be premised on a common law

16  violation such as breach of contract.   *See Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of*

17  *Pittsburgh*, 118 Cal. App. 4th 1061, 1072 (2004) ("[R]eliance on general common law principles

18  to support a cause of action for unfair competition [under the UCL] is unavailing."); *Khoury v.*

19  *Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993) (dismissing plaintiff's UCL claim premised

20  on breach of contract); *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th

21  Cir. 2010) (noting that "a common law violation such as breach of contract is insufficient" to

22  establish a claim under the unlawful prong of the UCL").   While an "allegation of a *systematic*

23  breach of contract" can constitute an *unfair* business practice under the UCL, *see In re Facebook*

24  *PPC Advertising Litig.*, No. 5:09-cv-03043-JF, 2010 WL 3341062, at *8 (N.D. Cal. Aug. 25,

25  2010) (citing *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1483 (2005)), even

26  construing the SAC as alleging that the breach was an *unfair* business practice, the SAC does not

27  allege a "systematic" breach, but rather a breach with respect to a single contract with a single

28  borrower.

1        Aside from the breaches, the third underlying unlawful-conduct predicate that the SAC

2   alleges is Defendant's violation of a Federal Rule of Bankruptcy Procedure § 3200.1.  (Dkt. No.

3   33 ¶ 43.)  This conclusory allegation is the sole reference to this procedural rule in the SAC.

4   However, at least one court has found that a plaintiff can state a claim for unlawful business

5   practices predicated on an underlying violation of this bankruptcy procedural rule.  *See Sokoloski*

6   *v. PNC Mortg.*, Civ. No. 2:14-1373 WBS, CKD, 2014 WL 6473810, at *7 (E.D. Cal. Nov. 18,

7   2014) ("[Defendant's] violation of Rule 3002.1[ ] may not only serve as a basis for a UCL claim,

8   but also would have permitted plaintiffs to reopen their chapter 13 case to seek sanctions.").

9   However, unlike the plaintiff in *Sokoloski*, Plaintiff here does not connect the injuries alleged to

10  the violation of the bankruptcy procedural rule.

11       To adequately allege injury—and therefore establish standing—for a UCL claim, plaintiffs

12  must show that they personally lost money or property "as a result of the unfair competition."  Cal.

13  Bus. & Prof. Code § 17204; *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 330 (2011).  "There are

14  innumerable ways in which economic injury from unfair competition may be shown[,]" including

15  alleging to have "a present or future property interest diminished; [to] be deprived of money or

16  property to which he or she has a cognizable claim;  or [ ] be required to enter into a transaction,

17  costing money or property, that would otherwise have been unnecessary."  *Kwikset Corp.*, 51 Cal.

18  4th at 323.

19       Here, Plaintiff alleges that she was damaged by the unfair competition inasmuch as she

20  "suffered various damages and injuries, including, but not limited to, loss of money and property

21  including but not limited to losses through overcharges, incurred attorneys' fees, a loss of

22  reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite,

23  frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and

24  depression."  (Dkt. No. 33 ¶ 44.)  The emotional distress and other non-monetary suffering

25  Plaintiff alleges are not recoverable damages for a UCL claim.  *See Tamburri v. Suntrust Mortg.,*

26  *Inc.*, No. 11-cv-02899-JST, 2013 WL 4528447, at *8 (N.D. Cal. Aug. 26, 2013) (citation omitted);

27  *see also Kariguddaiah v. Wells Fargo Bank, N.A.*, No. C 09-5716 MHP, 2010 WL 2650492, at *8

28  (N.D. Cal. July 1, 2010).  Likewise, attorneys' fees are insufficient to state a UCL claim, as to

hold otherwise would mean "a private plaintiff bringing a UCL claim automatically would have standing merely by filing suit[.]"  *Cordon v. Wachovia Mortg.*, 776 F. Supp. 2d 1029, 1039 (N.D. Cal. 2011).  Finally, while overcharges and destruction of credit can constitute monetary loss sufficient to confer standing to bring suit under the UCL, the plaintiff must connect that injury to the unlawful conduct alleged.  *See Ha v. Bank of Am., N.A.*, No. 5:14-cv-00120-PSG, 2014 WL 6904567, at *3 (N.D. Cal. Dec. 8, 2014) (footnote omitted); *see also Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 523 (2013) (finding lack of standing under the UCL where the plaintiff did not attribute the alleged harm to the defendant's alleged unlawful conduct).  Put another way, Plaintiff "has not lost her property and she fails to particularize any monetary loss" from the bankruptcy procedural violation "to render it more than mere speculation."  *Ha*, 2014 WL 6904567, at *3.  The Court therefore dismisses Plaintiff's UCL claim with leave to amend.

## CONCLUSION

For the reasons described above, the Court GRANTS Defendant's motion to dismiss the SAC.  Plaintiff's theory of the case continues to evolve.  The Court allowed the parties to submit supplemental submissions because at oral argument Plaintiff raised arguments not set forth in her papers.  Instead of addressing the issues raised at oral argument, in her supplemental submission Plaintiff offered yet another theory.  The Court will grant Plaintiff leave to file one further amended complaint within 21 days of this Order.  If Plaintiff chooses not to file a TAC, the Court will dismiss her claims with prejudice.

**IT IS SO ORDERED.**

Dated: October 19, 2015

_Jacqueline Scott Corley_
JACQUELINE SCOTT CORLEY
United States Magistrate Judge