1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7   THERESA BERKELEY,                      Case No.  15-cv-00749-JSC

8                   Plaintiff,

9         v.                              **ORDER RE: MOTION TO DISMISS**
                                          **THIRD AMENDED COMPLAINT**
10  WELLS FARGO BANK,
                                          Re: Dkt. No. 46
11                  Defendant.

12

13         Plaintiff Theresa Berkley brings this action challenging the activities of Defendant Wells

14  Fargo ("Defendant") in relation to a residential mortgage loan.  The Court previously dismissed

15  Plaintiff's Second Amended Complaint ("SAC"), finding that all claims alleged therein failed to

16  state a claim upon which relief could be granted.  (Dkt. No. 44.)[1]  Now pending before the Court is

17  Defendant's motion to dismiss the Third Amended Complaint ("TAC"), which brings four causes

18  of action: (1) negligent misrepresentation—a new cause of action not previously alleged—; (2)

19  breach of the implied covenant of good faith and fair dealing; (3) breach of contract; and (4)

20  violation of the Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200.  (Dkt. No. 46.)

21  Having reviewed the parties' submissions, the Court concludes that oral argument is unnecessary,

22  and GRANTS the motion.

23                                **BACKGROUND**

24         This action pertains to a mortgage loan Plaintiff obtained from Defendant secured by real

25  property located at 1312 Greenwood Road, Pleasanton, California 94566—namely, Plaintiff's

26  default on monthly payments on that mortgage loan, her filing for Chapter 13 bankruptcy, and

27  _____

28  [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
    ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

Defendant's subsequent representation that Plaintiff was still in default after the bankruptcy debt was discharged.  (Dkt. No. 45 ¶ 8.)  The factual background of this case was detailed in the Court's Orders dismissing the initial complaint, First Amended Complaint ("FAC"), and SAC, which the Court incorporates here in full, including the associated requests for judicial notice.  *See Berkeley v. Wells Fargo Bank*, No. 15-cv-00749-JSC, 2015 WL 6126815, at *1-3 (N.D. Cal. Oct. 19, 2015) ("*Berkeley II*"); *Berkeley v. Wells Fargo Bank*, No. 15-cv-00749-JSC, 2015 WL  -----; *Berkeley v. Wells Fargo Bank*, No. 15-cv-00749-JSC, Dkt. No. 32 (June 23, 2015) ("*Berkeley I*"). For the same reasons set forth in those orders, the Court GRANTS Defendant's request for judicial notice filed in conjunction with the instant motion.  (Dkt. No. 50.)  Because the TAC adds very few factual allegations, the Court will not reiterate the background here and instead will address any substantive changes to the claims in the discussion below.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 554 (internal citations and quotations omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

United States District Court
Northern District of California

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 663-64.

## DISCUSSION

### I.   Sufficiency of Plaintiff's Claims

Defendant moves to dismiss all four of Plaintiff's causes of action for failure to state a claim upon which relief may be granted.  Before addressing the adequacy of each cause of action in turn, the Court will address first whether the TAC sufficiently alleges a basis for excuse of Plaintiff's performance, as that is a required element for Plaintiff's two contract-based causes of action.

### A.   Plaintiff's Performance

Two of Plaintiff's causes of action—breach of contract and breach of the implied covenant of good faith and fair dealing—require that Plaintiff plead her own performance under the contract or excuse for nonperformance.  *See Marks v. Chicoine*, No. C 06-06806 SI, 2007 WL 160992, at *6 (N.D. Cal. Jan. 18, 2007) (citation omitted) (breach of implied covenant requires pleading plaintiff's performance or excuse for nonperformance); *Labra v. Cal.-W. Reconveyance Corp.*, No. C 09-2537-PJR, 2010 WL 8899537, at *9 (N.D. Cal. Mar. 11, 2010) (same for breach of contract).  In the SAC and the earlier iterations of the pleadings, Plaintiff repeatedly alleged that she substantially performed under the contract.  Reviewing the SAC, the Court concluded that Plaintiff had failed to plead her own substantial performance, as she was unable to cite any authority for the proposition that a plaintiff substantially performs based on her mere belief that her performance is sufficient, and that Plaintiff had failed to establish that the bankruptcy discharge eliminated her post-petition arrears as a matter of law.  *Berkeley II*, 2015 WL 6126815, at *5-6.

The Court also addressed Plaintiff's argument in her supplemental opposition, though not pleaded in the SAC, that her performance was excused by Defendant's conduct in the bankruptcy proceedings.  The Court noted that Defendant's alleged "violation of [Federal Rule of Bankruptcy

United States District Court
Northern District of California

1    Procedure] 3200.1(b) does not excuse Plaintiff's performance." *Id.* at *7.  However, the Court

2    concluded that it could be possible for Plaintiff to allege that "Defendant's abandonment of its

3    request for post-petition arrearage during the course of bankruptcy proceeding prevents—or

4    estops—Defendant from seeking such amounts and therefore waives Plaintiff's performance of

5    this contractual requirement[,]" *id.*, and granted Plaintiff leave to amend to assert such a theory in

6    the TAC.  Plaintiff has now done so.

7           The TAC adds the following allegations regarding Plaintiff's excused performance:

8               [U]ntil May 2014, Plaintiff made her post-petition mortgage
                payments every month pursuant to the mortgage statements she
9               received.  However, Defendant failed to notify Plaintiff or the
                Trustee administering Plaintiff's bankruptcy estate that a change in
10              Plaintiff's mortgage payments had occurred which would
                substantially affect her ability to make her mortgage payments under
11              the loan agreement.

12   (Dkt. No. 45 ¶ 52.)  As Plaintiff explains in her opposition, her theory is that "[Defendant's]

13   failure to uphold its duties under federal bankruptcy procedure, coupled with its acquiescence to

14   Plaintiff's Chapter 13 plan, excused Plaintiff's performance under the loan agreement."  (Dkt. No.

15   48 at 4; *see also id.* at 5 ("[Defendant's] conduct and failure to follow the Rules of Bankruptcy

16   Procedure excused Plaintiff's strict performance of the loan agreement.").)  Notably, this not the

17   theory of excuse for nonperformance that Plaintiff urged in her opposition to the motion to dismiss

18   the SAC.  Nevertheless, because the Court granted Plaintiff leave to amend to allege excuse for

19   nonperformance, the Court will address the new theory here.

20          According to Plaintiff, the "most important" way that Defendant's conduct excused

21   Plaintiff's performance was its failure to file a notice of mortgage payment change in the

22   bankruptcy proceedings in violation of Federal Rule of Bankruptcy Procedure 3002.1(b).  (Dkt.

23   No. 48 at 6.)  But in reviewing the SAC, the Court already held that failure to comply with Rule

24   3002.1(b)—a procedural rule that requires a holder of a secured claim secured by an interest in the

25   debtor's principal residence to file and serve on the debtor, debtor's counsel, and the trustee a

26   notice of any change in the payment amount at least 21 days before a payment in the new amount

27   is due—cannot and does not excuse Plaintiff's contractual obligation to submit complete monthly

28   mortgage payments.  *Berkeley II*, 2015 WL 6126815, at *7.  To reiterate, Rule 3002.1(b) is a

United States District Court
Northern District of California

4

purely procedural rule that provides for remedies within the bankruptcy action in which the violation occurs, not a more sweeping remedy capable of changing the scope of a borrower's future loan obligations.  *See id.* (citing Bankr. Code § 1322(b)(2)).  Thus, the only possible route to excuse for nonperformance is that Defendant's conduct during the bankruptcy proceedings— namely, its abandonment of its request for post-petition arrearage—constitutes a waiver of Plaintiff's performance.

Defendant contends that Plaintiff pleads no facts to support the conclusory allegation that Defendant abandoned its request for post-petition arrears during the bankruptcy proceedings, and that, in any event, the Court decided this issue against her when it reviewed the SAC.  Not so.  If anything, the Court decided otherwise, noting that Defendant had failed to cite any authority to show that Defendant's abandonment of its request for post-petition arrearage during the course of bankruptcy proceedings does *not* constitute waiver and therefore concluding that leave to amend to allege excuse for non-performance based on this theory would not be altogether futile.  *Berkeley II*, 2015 WL 6126815, at *7; *see also Schneider v. Bank of Am., N.A.*, No. CIV. S-11-2953 LKK/DAD PS, 2014 WL 2118327, at *11 (E.D. Cal. May 21, 2014) (finding excuse or waiver of performance where plaintiff alleged that the defendant failed to act for 9 years while the plaintiff failed to produce insurance as his mortgage loan required).  As the TAC now alleges the theory, and with the benefit of adversarial briefing on this issue, the Court addresses it here in detail.

In her papers, Plaintiff appears to concede that she was contractually obligated to make monthly post-petition payments pursuant to the rate set forth in her initial contract—*i.e.*, the Deed of Trust that set forth an adjustable interest rate—not at the fixed bankruptcy-plan rate, and that the amount did increase during the course of her bankruptcy proceedings.  She also concedes that the TAC alleges that Defendant provided her with some notice—through its motions for relief from the bankruptcy stay—that her payments were increasing.  (Dkt. No. 48 at 7 ("Defendant is correct that it filed Motions stating that the payments were increasing[.]").)  Indeed, throughout the TAC Plaintiff alleges as much.  (*See, e.g.*, Dkt. No. 45 ¶ 14 (alleging that in March 2008 Defendant advised Plaintiff and the bankruptcy court that Plaintiff's monthly payment had increased in February 2008), ¶ 15 (alleging that in November 2010 Defendant advised Plaintiff

5

and the bankruptcy court that Plaintiff's monthly payments had increased in July and September 2010), ¶ 21 (alleging that in November 2012 Defendant advised Plaintiff of her monthly payment amounts for the periods of June through August 2010, September 2010 through August 2011, and March 2012 through September 2012).)  Instead, the gravamen of her theory is that these informal notices were withdrawn and Defendant never provided "formal notice" or proof of the increases until it was too late—that is, after her September 2013 bankruptcy discharge.  (*Id.* ¶¶ 24, 26 (alleging that, prior to Plaintiff's bankruptcy discharge in September 2013, Defendant "never filed a notice in Plaintiff's bankruptcy advising Plaintiff and her bankruptcy trustee that Plaintiff's monthly mortgage payment was scheduled to change").)  Plaintiff cites TAC Paragraphs 19 through 23 to support this proposition, and these paragraphs indicate that in 2012 Defendant "finally provided an accounting" to Plaintiff, that the parties entered a stipulation in May 2013 and Defendant withdrew its Proof of Claim, and that Defendant "never filed another claim and never again asserted that any post-petition payments were outstanding or that Plaintiff was in default on her obligations to make post-petition payments."  (Dkt. No. 45 ¶¶ 19-23.)

The Court has already held that failure to provide Rule 3200.1(b) formal notice does not excuse Plaintiff's performance.  Thus, the question is whether despite having informal notice of the payment increase, Defendant's withdrawal of its Proof of Claim and failure to provide Plaintiff with an accounting until after the discharge constituted a waiver of Plaintiff's obligation to make the full post-petition payments each month.  While Defendant is unable to cite a case holding exactly as much, it nonetheless urges that the answer is no for several reasons.

First, Defendant contends that its withdrawal of its Proof of Claim and failure to file an accounting of Plaintiff's post-petition arrearage during the bankruptcy proceeding has no effect because a secured creditor is not required to submit such a claim or file any evidence in support thereof in the first instance.  The Court agrees.  In *Newman v. First Sec. Bank of Bozeman*, 887 F.2d 973 (9th Cir. 1989), the Ninth Circuit addressed the debtors' argument that their bank was without recourse to enforce its lien on their home because it did not file a proof of claim during the course of the debtors' Chapter 7 bankruptcy proceedings.  The Ninth Circuit held that "[g]iven that a creditor with a secured lien is not required to file a proof of claim prior to discharge in order to

maintain his lien, it follows logically that if a secured creditor chooses not to file a claim or otherwise assert any interest in the security during the bankruptcy proceeding, the discharge has no effect on his lien." *Id.* at 976.  While pursuing the proof of claim permits the bank to seek a personal judgment against the debtor or to receive distributions directly from the bankruptcy trustee, *see id.* (citing *In re Cornist*, 7 B.R. 118, 120 (Bankr. S.D. Cal. 1980)), the proof of claim is not necessary for the bank to maintain its original interest in the property.  Indeed, the bankruptcy court's plan confirmation states that the holder of all secured claims "retain the lien securing such claim[.]"  (Dkt. No. 35 at 69.)  To conclude that withdrawal of the Proof of Claim effectively eliminated Defendant's secured claim on the Property would therefore be contrary to the bankruptcy court's order.

Plaintiff seeks to distinguish *Newman* on the grounds that it applies only to Chapter 7 bankruptcy proceedings, not Chapter 13, as here.  (Dkt. No. 48 at 8 ("Contrary to Defendant's assertion, the failure to object to the Claim does affect the validity of its lien in a Chapter 13, although it would not in a Chapter 7 as set forth in *Newman*.") (citations omitted).)   But the cases Plaintiff cites do not hold as much.  For example, in *In re Pardee*, 193 F.3d 1083, 1086 (9th Cir. 1999), the plan expressly discharged *post-petition* debt obligations, which is not the case here as discussed in the Court's earlier Orders.  *See Berkeley II*, 2015 WL 6126815, at *5-6.  Her reliance on *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995), fares no better.  There, the court addressed whether secured creditors had standing to object to a Chapter 13 plan in the first instance, and the court answered in the affirmative.  *Id.* at 1409.  The *In re Andrews* court noted that "[i]n most instances, failure to object [to a Chapter 13 plan] translates into acceptance of the plan by the secured creditor."  *Id.* at 1409 (citation omitted).  But again, the secured creditors in that case were not challenging post-petition arrears or other debt obligations beyond the bankruptcy discharge's reach, as here.  Thus, the Court concludes that *Newman* applies, and Defendant had no obligation to file a claim regarding post-petition arrears—debt obligations that, by statute, the bankruptcy discharge did not include.  For similar reasons, Plaintiff's argument that her confirmed Chapter 13 plan bars Defendant from asserting that she owes more in post-petition arrears because it has *res judicata* effect is equally unavailing.

United States District Court
Northern District of California

1    Second, Defendant argues that reading a waiver into Defendant's conduct is contrary to the

2    plain language of the Promissory Note and Deed of Trust, and therefore cannot stand.  (*See* Dkt.

3    No. 35 at 18 ("Lender does not have to give me notice of a Breach of Duty.  If Lender does not

4    make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a

5    demand for full payment of the Sums Secured upon any other Breach of Duty."); Dkt. No. 42-1 at

6    62 ("Even if, at a time when I am in default, the Lender does not require me to pay immediately in

7    full as described above, the Lender will still have the right to do so if I am in default at a later

8    time.").)  Based these provisions—particular the latter, entitled "No Waiver by Lender"—finding

9    waiver under the circumstances presented here, when Defendant apparently did not require

10   Plaintiff to pay immediately the full amount due but required it later, would contradict the terms of

11   the parties' agreement.

12       For the reasons described above, Plaintiff has failed to adequately plead that her

13   performance was excused.  She therefore cannot state a claim for breach of contract or breach of

14   the implied covenant of good faith and fair dealing.  The Court will nevertheless address the other

15   elements of these two causes of action assuming for the purposes of the analysis that Plaintiff had

16   adequately alleged excuse for non-performance.

17       B.    Breach of Contract

18       In the third cause of action, Plaintiff alleges that Defendant breached two provisions of the

19   governing loan documents: Section 4(H) of the Promissory Note, by failing to provide Plaintiff

20   with timely notice of change in her monthly payments; and Section 2(b) of the Deed of Trust, by

21   requiring Plaintiff to pay more than the amount permitted by law into an escrow account.  (Dkt.

22   No. 45 ¶¶ 63-65.)

23       A plaintiff asserting a breach of contract claim must allege facts sufficient to support the

24   following elements: (1) existence of a contract, (2) performance by the plaintiff or excuse for

25   nonperformance, (3) breach by the defendant, and (4) resulting damages.  *First Commercial*

26   *Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).  Plaintiff has alleged facts that plausibly

27   establish the existence of a contract—namely, the contractual obligations set forth in the

28   Promissory Note and Deed of Trust.  As discussed above, Plaintiff has not adequately alleged the

second element, performance or excuse for nonperformance, but the Court will proceed with analysis as if she had, and will address the remaining elements of each breach in turn.

            1.     *Breach of Section 4(H) of the Promissory Note*

Section 4(H) provides in relevant part that "Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called 'Payment Change Notice,' before each Payment Change Date. The Payment Change Notice will include information required by law." (Dkt. No. 47 at 6.) The TAC breach of Section 4(H) theory is the same as the breach alleged in the SAC: that Defendant breached by failing "to provide a timely—*i.e.*, issued before the change—notice of payment change from 2007 through 2013." *Berkeley II*, 2015 WL 6126815, at *11. (*See* Dkt. No. 45 ¶ 63 ("Defendant breached this provision by failing to give Plaintiff a notice of payment change notice [sic] from 2007 through 2013 before her payments changed.").) Specifically, Plaintiff's payments had changed to $4,200 per month in September 2011 and to $3,900 per month in March 2012, but she did not receive notice of the changes until November 2012. (*Id.*) As a result, Plaintiff was unaware that Defendant deemed her monthly payments insufficient and, had she been aware, she would have been able to pay the new amounts. (*Id.*)

In reviewing the SAC's Section 4(H) claim, the Court noted that it was "not clear from the SAC which, if any, of Defendant's failures to provide notice of increased payments occurred after Defendant's conduct had waived or excused Plaintiff's own performance on the contract, and Plaintiff cannot recover for Defendant's alleged breach that occurred while she was still in default." *Berkeley II*, 2015 WL 6126815, at *11 (citing *Labra*, 2010 WL 889537, at *9, and *Kirkeby v. JP Morgan Chase Bank, N.A.*, No. 13cv377 WQH-MDD, 2014 WL 7205634, at *11 (S.D. Cal. Dec. 17, 2014)). The Court therefore concluded that the SAC's Section 4(H) claim must be dismissed because it did "not allege that Plaintiff's performance was excused before Defendant's breach." *Id.* The Court also concluded that Plaintiff had failed to adequately allege how she was injured by the failure to provide her with notice of the increased payments "given that she [ ] admits that she was provided notice at certain times and [ ] nonetheless failed to make the higher payments." *Id.* at *12. The Court directed Plaintiff that "[a]ny further amended complaint must set forth in a straightforward way how and when Plaintiff's performance was

United States District Court
Northern District of California

excused, how and when Defendant breached the contract, and how that breach injured Plaintiff." *Id.* (footnote omitted).  Plaintiff has failed to do so in the TAC for at least two reasons.

First, Plaintiff has not added any allegations that imply that her performance was excused before Defendant's breach.  Instead, the TAC still alleges that the failure to provide timely notice occurred from 2007 through 2013 and, despite the Court's clear instruction, the TAC still does not identify when Plaintiff's excuse for nonperformance arose, leaving the Court to venture a guess on its own.  For the reasons discussed above, Defendant's failure to provide formal notice to Plaintiff of the increase during the course of the bankruptcy proceedings does not excuse her performance.  Thus, the only possible angle to excuse Plaintiff's performance was Defendant's abandonment of its request for post-petition arrearage during the bankruptcy.  And even if Plaintiff had adequately pleaded this excuse for non-performance, her performance would not have been excused until the date of her bankruptcy discharge: September 2013.  The two payment changes that the TAC specifically identified occurred in September 2011 and March 2012, when Plaintiff was still proceeding through bankruptcy and thus remained in default.  The TAC therefore still fails to allege that Plaintiff's performance was excused before Defendant's breach, and this breach of contract claim must be dismissed.

Second, like the SAC, the TAC falls short on alleging damages.  Citing TAC Paragraphs 63 and 64, Plaintiff urges that had she been given notices of the increased payments, she would have made the increased payments and therefore avoided late fees that she was charged.  (Dkt. No. 45 ¶¶ 63-64.)  The defects with this argument are twofold.  Most importantly, these paragraphs do not even mention late fees.  Moreover, these allegations are simply not plausible, inasmuch as Plaintiff elsewhere alleges that she did eventually receive notice of the increased payments and nonetheless failed to make the higher payments when she learned they were due.

For the reasons described above, Plaintiff's breach of contract claim premised on Section 4(H) of the Promissory Note fails to state a claim upon which relief may be granted.

### 2. *Breach of Section 2(B) of the Deed of Trust*

Plaintiff's second theory of breach arises out of Section 2(B) of the Deed of Trust, which provides that if Defendant sets up an escrow account, "Lender may, at any time, collect and hold

United States District Court
Northern District of California

1    Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage

2    loan may require for an escrow account under the federal Real Estate Settlement Procedures Act

3    of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ('RESPA')."  (Dkt. No. 45 ¶ 65.)

4    As the Court previously explained, "RESPA, in turn, limits the amount a lender may require a

5    borrower to deposit into an escrow account.  Specifically, the lender may not require a borrower to

6    deposit sums in to an escrow account that exceed one-twelfth of the total amount of the estimated

7    taxes reasonably anticipated to be paid over the course of one year.  12 U.S.C. § 2609(a)(2)(A)."

8    *Berkeley II*, 2015 WL 6126815, at *12.  Despite these requirements, Plaintiff alleges that

9    Defendant required Plaintiff to pay $771.07 per month into an escrow account, totaling an annual

10   payment of $9,252.84, when her yearly property tax totaled only $5,000.  (Dkt. No. 45 ¶ 66.)

11         In reviewing the SAC's Section 2(B) claim, the Court rejected Defendant's argument that

12   issue preclusion barred Plaintiff from raising this issue in this litigation, but reasoned that the

13   claim as written was untimely because the statute of limitations for a written contract claim under

14   California law is four years.  Cal. Code Civ. P. § 337.  Plaintiff filed this action in 2015—9 years

15   after the first reference to improper escrow collection and thus outside the statutory window—and

16   there were no allegations that the improper escrow calculation was ongoing and no date provided

17   for how long it lasted.  *Berkeley II*, 2015 WL 6126815, at *13.  The Court permitted Plaintiff to

18   amend the claim and instructed her to "specifically allege when the improper escrow payments

19   began and when they ended."  *Id.*

20         The TAC now alleges that the improper escrow payments began "in May 2006 and

21   continu[ed] for a period of over four years[.]"  (Dkt. No. 45 ¶ 66.)  Defendant makes the same

22   issue preclusion argument, which the Court rejects again for the reasons explained in the Order

23   dismissing the SAC.  *See Berkeley II*, 2015 WL 6126815, at *13.  Defendant further argues that

24   the statute of limitations still bars the Section 2(B) claim, contending that, as pleaded, the claim

25   conduct spans from 2006 to 2010, and thus the four-year limitations period expired before Plaintiff

26   commenced this action.  Plaintiff, for her part, insists that the TAC alleges that the Section 2(B)

27   breach ranged from July 2007 to September 2013.  (Dkt. No. 48 at 10.)  She further contends in

28   her opposition that the TAC alleges that the improper escrow calculations lasted "throughout the

1   entire course of the bankruptcy, commencing in September 2013" and also argues that some of the

2   breaches occurred "from February 18, 2011 through February 18, 2015, of which there are many."

3   (*Id.*)  With respect to the first statement, the Court assumes that Plaintiff meant *ending* in

4   September 2013, when the bankruptcy court discharged her pre-petition debt.  Even if that were

5   the case, the TAC paragraph she cites does not allege as much—in fact, it does not even refer to

6   the Section 2(B) claims at all—and the Court has not found any paragraph that alleges a particular

7   time frame beyond Paragraph 66, which states that the escrow activities began in May 2006 and

8   continued for "over four years."  (Dkt. No. 45 ¶ 66.)  And nowhere in the TAC does Plaintiff

9   allege that the improper escrow activity continued through February 2015.  At bottom, while

10  Plaintiff alleges that the untimely notice of payment changes—*i.e.*, the Section 4(H)-violating

11  conduct—spanned 2007 through September 2013, she includes no such allegations about the

12  Section 2(B)-violating conduct.  While the Court is obligated to draw all reasonable inferences in

13  Plaintiff's favor, given the express instruction the Court gave Plaintiff to plead—if she could

14  consistent with Rule 11—facts that demonstrate that the improper escrow activity continued into

15  the limitations period, this vague allegation that the conduct continued for "over four years" after

16  beginning in May 2006 falls short.  How long after four years?  Four years and one month?  For

17  years and three months?  Even four and a half years would mean that it continued until November

18  2010, meaning the limitations period would expire in November 2014, several months before

19  Plaintiff filed this action.

20      Plaintiff urges that the doctrine of continuing wrong protects any untimely improper

21  escrow claims.  To be sure, the doctrine might have saved otherwise untimely claims if the TAC

22  adequately alleged that the improper escrow conduct actually continued into the statutory period.

23  But it does not.  Accordingly, even if Plaintiff had adequately pleaded excuse for non-

24  performance—which she has not—her breach of Section 2(B) claim would still fail to state a

25  claim upon which relief may be granted because it is time-barred.

26      C.      Breach of the Implied Covenant of Good Faith and Fair Dealing

27      Plaintiff also brings a cause of action for breach of the implied covenant of good faith and

28  fair dealing.  In the SAC, Plaintiff alleged that Defendant breached the implied covenant by

United States District Court
Northern District of California

12

United States District Court
Northern District of California

instructing Plaintiff not to make monthly payments while she applied for a loan modification, and the Court granted Plaintiff leave to amend to allege facts consistent with those pleadings that courts in this District have found sufficient to state a claim. *See Berkeley II*, 2015 WL 6126815, at *10. In the TAC, instead of making these changes, Plaintiff has changed her theory of breach, now alleging that the breach stemmed from "Defendant's fail[ure] to notify Plaintiff or the Trustee administering the estate that a change in Plaintiff's mortgage payments had occurred which would substantially affect her ability to make her mortgage payments under the loan agreement." (Dkt. No. 48 at 7.) In other words, the implied covenant claim arises out of the failure to provide notice of the increase in payments.

When a plaintiff brings both a breach of contract and a breach of the implied covenant claim, the latter will be superfluous and subject to dismissal if both claims cite the same underlying breach. *See Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) (citation omitted); *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990). A plaintiff may, however, bring both claims if they are based on two different breaches. *Id.*; *see also Daly v. United Healthcare Ins. Co.*, No. 10-CV-03032-LHK, 2010 WL 4510911, at *4 (N.D. Cal. Nov. 1, 2010). Here, the implied covenant claim is based on Defendant's failure to provide notice to Plaintiff of the increase in payments. This is the same breach underlying part of Plaintiff's breach of contract cause of action: she alleges that Defendant breached Section 4(H) of the Promissory Note, by failing to provide notice of changes in the amount of her monthly payment, and as a result, Plaintiff was unaware that her monthly payments were deemed insufficient. (Dkt. No. 45 ¶ 63.) As the implied covenant claim is based on the same breach— failure to provide notice of an increase in payment—the implied covenant claim is therefore superfluous and Plaintiff may not bring the claim in tandem with her breach of contract claim. *See Landucci*, 65 F. Supp. 3d at 716 (citation omitted); *Careau & Co.*, 222 Cal. App. 3d at 1395.

Moreover, an implied covenant claim is not meant to be used to enforce or alter the express terms of a contract. *See Hill v. State Farm Mut. Auto. Ins. Co.*, 166 Cal. App. 4th 1438, 1456 (2008). Here, the Promissory Note and Deed of Trust contain provisions governing the lender's required notice of payment changes—*i.e.*, Section 4(H) of the Promissory Note, which is the

subject of Plaintiff's breach of contract claim.  (*See* Dkt. No. 47 at 6 ("Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called 'Payment Change Notice,' before each Payment Change Date.").)  Because Plaintiff's implied covenant claim is about the same exact issue—notice of payment changes—it either seeks to enforce the express contractual provisions or alter the notice requirements therein, so her claim is a non-starter.  *See id.*  Notably, in her opposition Plaintiff fails to respond to either of these points, which could be deemed as a concession that the implied covenant claim is indeed identical and superfluous to the breach of contract claim and thus properly subject to dismissal.  *See Ardente v. Shanley*, No. 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 9, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence.").

In addition, in reviewing the SAC, the Court also concluded that Plaintiff had failed to adequately allege that she was damaged by Defendant's alleged breach.  *Berkeley II*, 2015 WL 6126815, at *10 (citation omitted).  The Court noted that Plaintiff's allegations that she suffered damaged credit were not pleaded with the particularity required under Rule 9(b) nor had she connected the alleged breach with any harm to her credit, but that the late fees she alleged might have been sufficient.  *Id.*

In the TAC, Plaintiff again urges that Defendant's breach—though different this time—harmed her credit.  She alleges that "[a]s a result of Defendant's conduct, Plaintiff's credit has been detrimentally impacted given that she has been reported as behind in her mortgage payments throughout the entire time she believed she was curing her arrearage through her bankruptcy and making regular payments." (Dkt. No. 45 ¶ 56.)  This allegation is too vague and conclusory to meet the strictures of Rule 9(b).  *See Lundgren v. Freeman*, 307 F.2d 104, 115 (9th Cir. 1962).  It also fails to differentiate between the entire time period when Plaintiff thought she was curing her arrearage during the course of her bankruptcy, and the time period she did so after her debt was discharged—*i.e.*, once her performance was allegedly excused—as only the latter are recoverable. However, Plaintiff also again alleges that her damages include late fees that are "now due and owing" that would not have accrued but for Defendant's interference,  (*Id.* ¶ 57.)  In addition, Defendant argues for the first time in its reply that the late fees are not recoverable because

1    Plaintiff does not allege that she actually paid them, so she has suffered no damage.  (Dkt. No. 49

2    at 11.)  The Court need not consider this argument, as it was not raised until the reply brief.  *See,*

3    *e.g.*, *Bernard v. Donat*, No. 11-cv-03414-RMW, 2012 WL 10138, at *3 (N.D. Cal. Jan. 2, 2012)

4    ("[T]he court agrees with plaintiff that consideration of arguments raised for the first time on reply

5    would prejudice plaintiff if he is not given an opportunity to respond."); *see also Jones v. Baker*,

6    No. 2:09-cv-2091 JFM (PC), 2010 WL 1992196, at *3 (E.D. Cal. May 13, 2010) ("Generally, the

7    court cannot grant a motion to dismiss on a new argument presented for the first time in a reply

8    brief.").  In any event, the argument is besides the point, because the TAC fails to allege excuse

9    for non-performance and the implied covenant claim should also be dismissed as superfluous.

10          D.   Negligent Misrepresentation

11          For the first time in the TAC, Plaintiff brings a claim for negligent misrepresentation.  To

12   state a claim for negligent misrepresentation, a plaintiff must allege the following: "1) a

13   representation as to a material fact; 2) the representation is untrue; 3) the defendant made the

14   representation without a reasonable ground for believing it true; 4) an intent to induce reliance; 5)

15   justifiable reliance by the plaintiff who does not know that the representation is false; and 6)

16   damage."  *Bear Stearns & Co. v. Daisy Sys. Corp.*, 97 F.3d 1171, 1180 (9th Cir. 1996) (citing

17   *Masters v. San Bernardino Cnty. Emps. Retirement Ass'n*, 32 Cal. App. 4th 30, 40 n.6 (1995)); *see*

18   *also* Cal. Civ. Code § 1710(2).  To support a negligent misrepresentation claim, the plaintiff must

19   also adequately allege that the defendant owed a duty of care to the plaintiff.  *Villegas v. Wells*

20   *Fargo Bank, N.A.*, No. C 12-02004 LB, 2012 WL 4097747, at *7 (N.D. Cal. Sept. 17, 2012)

21   (citations omitted); *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1190 (N.D. Cal. 2012)

22   ("As with any negligence claim, the tort of negligent misrepresentation requires that Plaintiff

23   allege a duty of care.") (citation omitted); *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d

24   1110, 1163 (N.D. Cal. 2013) (noting that to state a claim for negligent misrepresentation,

25   "Plaintiffs must allege the existence of a duty of care.") (citation omitted); *cf. Gilmore*, 75 F.

26   Supp. 3d at 1269 ("Because negligent misrepresentation is a species of fraud, and not common-

27   law negligence, Plaintiff need not allege a duty of care.").

28          "[N]egligent misrepresentation is a species of fraud[.]"  *Gilmore v. Wells Fargo Bank N.A.*,

United States District Court
Northern District of California

75 F. Supp. 3d 1255, 1269 (N.D. Cal. 2014).  "The Ninth Circuit has not yet decided whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation, but most district courts in California hold that it does."  *Id.* (citing *Villegas*, 2012 WL 4097747, at *7); *see also Rockridge Trust*, 985 F. Supp. 2d at 1163 ("District courts in the Ninth Circuit regularly apply the Rule 9(b) pleading standard to negligent misrepresentation claims sounding in fraud.") (citations omitted); *cf. U.S. Capital Partners, LLC v. AHMSA Int'l, Inc.*, No. 12-6520 JSC, 2013 WL 594285, at *3 (N.D. Cal. Feb. 14, 2013) (collecting cases and distinguishing the situation in which the negligent misrepresentation sounds primarily in negligence, not fraud, to which Rule 9(b) does not apply).  As Plaintiff does not respond to Defendant's contention that Rule 9(b) applies to her negligent misrepresentation claim, the Court assumes that it does here.

Here, Plaintiff alleges that in May 2014 Defendant's employee, Mr. Bustamante, told Plaintiff's authorized representative, Tim Berkley, that Plaintiff "would not be making her normal monthly payments" during loan modification review and that Plaintiff "could not make payments while she was applying for a loan modification."  (Dkt. No. 45 ¶ 36.)  Mr. Bustamante made the statements "with the intent to induce Plaintiff into relying on the statement, and Plaintiff did so rely, as demonstrated by the fact that she stopped making payments when she was told she could not do so if she pursued a loan modification."  (*Id.* ¶ 38.)  Plaintiff further alleges that Mr. Bustamante's statement was false when made "given that Defendant has demanded payment for every month that she was instructed she couldn't make a payment while she applied for a modification" and that Mr. Bustamante had no reasonable grounds to believe the statement to be true given his role as "assigned home preservation specialist[.]"[2]  (*Id.* ¶¶ 39-40.)  As a result of the misrepresentation, Plaintiff has suffered damages including "damage to [her] credit, excessive late fees and charges, attorneys' fees and costs to save [her] home, the loss of [her] home if it is sold, a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and

---

[2] This claim is essentially a reworked version of the failed breach of the implied covenant claim from the SAC, which alleged that Defendant interfered with her obligations to make monthly payments by informing her that she could not make monthly payments while her loan modification application was pending.

United States District Court
Northern District of California

depression." (*Id.* ¶ 41.)

Nowhere in the TAC does Plaintiff allege that Defendant owed her—or Tim, to whom Mr. Bustamante made the alleged misrepresentation—a duty of care.  "Whether a duty of care exists [between a financial institution and a borrower] is a question of law to be determined on a case-by-case basis."  *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 944 (2014). California law instructs courts to balance a number of factors, including

> (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered an injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.

*Gilmore*, 75 F. Supp. 3d at 1267 (citing *Biakanja v. Irving*, 49 Cal.2d 647, 650 (1958)).  Applying these factors, "some courts have held that when a lender engages in loan modification negotiations there is no duty of care."  *Gilmore*, 75 F. Supp. 3d at 1267 (collecting cases).  "However, other federal district court opinions in this district and a recent California Court of Appeal opinion have held that when a lender agrees to consider a borrower's loan modification application, it then owes a duty of care *in how it processes that application*."  *Id.* (emphasis added); *see Alvarez*, 228 Cal. App. 4th at 944 (concluding that, having agreed to consider a loan modification, defendant owed a duty to exercise reasonable care in the review and processing of the application); *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10-03892 WHA, 2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011) (same); *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10-0290 PVT, 2010 WL 1881098, at *4 (N.D. Cal. May 10, 2010) (same).  Here, Plaintiff's claim is not about Defendant's inadequate processing of her loan modification application, but a statement that apparently preceded the processing.  However, because Defendant does not argue that it did not owe a duty of care to Plaintiff, the Court assumes for the purposes of this analysis that Defendant in fact owed Plaintiff a duty of care.

Instead, Defendant urges that other elements of negligent misrepresentation are inadequately pleaded—namely, (1) that Mr. Bustamante's statement was about what "would" happen in the future and is therefore an inactionable future promise; (2) that the TAC does not

1    adequately allege that Mr. Bustamante's statement was false when made; and (3) Plaintiff has

2    failed to establish how the misrepresentation damaged her.  The Court will address each in turn.

3            First, Defendant's argument that Mr. Bustamante's alleged misrepresentation is an

4    inactionable future promise is a tortured reading of the TAC.  The allegation is that Mr.

5    Bustamante told Plaintiff that she could not make payments while she was applying for the loan

6    modification.  She was applying for a loan modification at the time Mr. Bustamante made the

7    statement.  It is therefore a statement regarding present fact, not future conduct.

8            Second, Defendant urges that the TAC does not adequately allege damages resulting from

9    her reliance on the statement because if anything, she benefited from relying on Mr. Bustamante's

10   statement by not making her monthly payments, which saved her thousands of dollars.   But this

11   argument ignores the TAC's allegation that Plaintiff incurred excessive late fees and destruction of

12   credit by not making those monthly payments, which is enough to allege damages.[3]

13          However, with respect to the falsity of the statement, Plaintiff alleges on information and

14   belief that the statement that she could not make monthly payments while her loan modification

15   application was pending was false when made.  (Dkt. No. 45 ¶ 36.)  She further alleges that

16   Defendant did not send her monthly statements or accept monthly payments while her loan

17   modification application was pending, which suggests that the statement was, in fact, accurate

18   when made.  (*Id.* ¶¶ 36, 37.)  Plaintiff urges that the statement was "demonstrably false" (Dkt. No.

19   48 at 11), based on the TAC's allegation that after the loan modification was denied, Defendant

20   demanded payment for every month in which it stated that Plaintiff could not make a payment.

21   (Dkt. No. 45 ¶ 39.)  But even drawing all inferences in Plaintiff's favor, Defendant's later demand

22   for payment after Plaintiff's loan modification was denied does not mean that Mr. Bustamante's

23   statement that Plaintiff could not make payments while her application was pending was false.  In

24

25   _____

     [3] While Plaintiff also argues that the emotional distress damages she alleges are themselves
26   sufficient (Dkt. No. 48 at 11), it is "settled law [that] damages for emotional distress are ordinarily
     not recoverable in an action for negligent misrepresentation when the injury other than the
27   emotional distress is only economic"—*i.e.*, in the absence of physical impact or injury  *Gilberd v.
     Dean Witter Reynolds, Inc.*, No. C 91-3254 TEH, 1992 WL 880089, at *5 (N.D. Cal. Aug. 11,
28   1992) (citation omitted); *see also Butler-Rupp v. Lourdeaux*, 134 Cal. App. 4th 1220, 1227 (2005)
     (same).

United States District Court
Northern District of California

1    contrast, had Plaintiff alleged that Mr. Bustamante told Tim that her monthly payments were

2    waived while her loan modification application was pending and would never be owed,

3    Defendant's later demand that Plaintiff pay for those months would have been demonstrably false.

4    Not so as pleaded.  Even drawing all reasonable inferences in Plaintiff's favor, the TAC does not

5    adequately allege that the statement that she could not make monthly payments while her loan

6    modification application was pending was false when made.   For this reason alone, Plaintiff's

7    negligent misrepresentation cause of action fails to state a claim.

8         E.      Unfair Business Practices

9         Plaintiff's fourth cause of action alleges that Defendant's conduct violates California's

10   Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210.  (Dkt. No. 33 ¶¶ 39-

11   44.)  The UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or

12   (3) fraudulent.  *Id.* § 17200.  Each prong is independently actionable.  *Lozano v. AT&T Wireless*

13   *Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

14        The Court construed the SAC UCL claim as alleging unlawful business practices, but

15   concluded that the claim failed as written.  Specifically, because an unlawful UCL claim is not a

16   standalone claim but premised on other unlawful conduct, because Plaintiff had failed to state a

17   claim for breach of contract or breach of the implied covenant, the UCL claim premised on those

18   underlying common law claim likewise failed.  *Berkeley II*, 2015 WL 6126815, at *14.  The Court

19   next concluded that an "unlawful" business practices claim usually cannot be premised on a

20   common law violation like breach of contract unless the violation is alleged to be systemic, which

21   the SAC did not allege.  *Id.*  The Court further concluded that while a plaintiff may be able to an

22   unlawful business practices claim based on a violation of Federal Rule of Bankruptcy Procedure

23   3200.1(b), Plaintiff had failed to connect any alleged injuries to a violation of that rule.  *Id.*

24   Finally, the Court concluded that the SAC did not adequately allege cognizable UCL damages,

25   inasmuch as the emotional distress and other non-monetary suffering are not recoverable,

26   attorneys' fees incurred in bringing the claim are insufficient, and the alleged overcharges and

27   destruction of credit were not connected to the unlawful conduct alleged nor particularized.  *Id.*

28   (citations omitted).  Thus, the Court dismissed the SAC's UCL claim with leave to amend to cure

United States District Court
Northern District of California

19

1    the defects identified.  *Id.*

2         Plaintiff did not make any changes to the UCL claim in the TAC: the substance of the

3    claims remains identical.  Because the TAC's breach of contract and breach of the implied

4    covenant causes of action still fail to state a claim, the UCL claim predicated on these violations

5    likewise fails.  And in any event, nor has Plaintiff included allegations that suggest that the

6    breaches were systemic such that an unlawful business practices claim might lie.  Because

7    Plaintiff has not adequately alleged negligent misrepresentation, the UCL claim predicated on that

8    common law claim also fails.  Thus, as with the SAC, the only TAC UCL claim left standing is

9    Plaintiff's allegation that Defendant's violation of Bankruptcy Rule 3200.1(b).

10        While Defendant contends that the Court dismissed the Bankruptcy Rule 3200.1(b) claim

11   with prejudice and thus implies that it therefore cannot serve as the basis for a UCL claim, this

12   argument at best misunderstands and at worst misconstrues the Court's Orders.  To be sure, the

13   Court dismisses the separate cause of action that Plaintiff brought alleging a violation of the rule,

14   as no separate cause of action exists.  (Dkt. No. 32.)  But in the Order dismissing the SAC, the

15   Court specifically noted that at least one court has found that a plaintiff can state a claim for

16   unlawful business practices predicated on an underlying violation of this procedural rule, *Berkeley*

17   *II*, 2015 WL 6126815, at *15 (citing *Sokoloski v. PNC Mortg. Co.*, Civ. No. 2:14-1373 WBS,

18   CKD, 2014 WL 6473810, at *7 (E.D. Cal. Nov. 18, 2014)), but concluded that Plaintiff had failed

19   to allege a cognizable injury or recoverable damages based on that violation.  So it is in the TAC.

20   Notably, Plaintiff did not add any allegations to the damages and injuries alleged in the SAC that

21   the Court found insufficient.  The threadbare UCL claim therefore does not connect the procedural

22   rule violation to any loss of money or property, as the UCL requires.  Plaintiff's UCL claim

23   therefore must be dismissed.

24   **II.    Leave to Amend**

25        Generally, when a complaint is dismissed, "leave to amend shall be freely given when

26   justice so requires."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 92 (9th Cir. 2010).

27   However, leave to amend may be denied "where the amendment would be futile."  *Gardner v.*

28   *Martino*, 563 F.3d 981, 990 (9th Cir. 2009).  Plaintiff has already amended her breach of contract,

United States District Court
Northern District of California

20

breach of the implied covenant, and UCL claims three times, twice with explicit instructions from the Court about how Plaintiff could amend and what facts were necessary, but she failed to do that in the TAC.  Instead of following the Court's instructions, for a number of causes of action Plaintiff simply changes her theory of relief altogether or, in the case of the negligent misrepresentation cause of action, brings a new claim altogether.  Plaintiff did not identify in her opposition any facts she could add that would render her claims plausible.  Under these circumstances, especially given Plaintiff's multiple opportunities to amend, the Court concludes that permitting Plaintiff another opportunity to amend her claims would be futile.  *See Semiconductor Energy Lab. Co. v. Yujurio Nagata*, No. C 11-02793 CRB, 2012 WL 177557, at *8 n.6 (N.D. Cal. Jan. 23, 2012) (citing *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)).

CONCLUSION

For the reasons described above, the Court GRANTS Defendant's motion to dismiss the TAC with prejudice.   Judgment will be entered for Defendant, and the Clerk of Court shall close the case.

This Order disposes of Dkt. No. 46.

**IT IS SO ORDERED.**

Dated: January 6, 2016

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California